| 52 | 367 |
| 80 | 45 |

| 52 | 367 |
| 89 | 277 |

## William R. Hunter v. The People of the State of Illinois.

1. INDICTMENT—*Statutory Offenses.*—An indictment for a mere statutory offense must be framed upon the statute, and this fact must distinctly appear upon the face of the indictment itself.

2. STATUTORY CRIMES—*Requisites of the Indictment.*—When the language of a statute creating a new offense does not describe the act or acts constituting such offense, the pleader is bound to set them forth specifically.

3. CRIMINAL LAW—*Statutory Offenses—Frame of the Indictment.*— On the general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is; but in no other case is it sufficient to follow the words of the statute.

4. ELECTION FRAUDS—*Insufficient Indictment.*—Under Sec. 82, Ch. 46, R. S., providing that "Whoever at an election fraudulently or deceitfully changes a ballot of an elector, with intent to deprive such elector of voting for such person as he intended, shall, on conviction thereof, be fined in a sum not exceeding one thousand dollars, or imprisoned in the county jail not exceeding one year, or both, in the discretion of the court," an indictment charging that the defendant unlawfully, willfully, fraudulently and deceitfully did change a certain ballot of one J. T., who was then and there an elector, etc., with intent to deprive the said J. T. as such elector of voting for one D. C. D. for the office of supervisor of said town of Mt. Z. as he, the said J. T., then and there intended, contrary to the form of the statute, etc., is not sufficient.

**Memorandum.**—Indictment for changing ballot. Error to the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1893, and reversed. Opinion filed October 28, 1893.

The opinion states the case.

BRIEF FOR PLAINTIFF IN ERROR, BUCKINGHAM & SCHROLL AND W. C. JOHNS, ATTORNEYS.

"The special matter of the whole offense should be set forth in the indictment with such certainty that the offense may judicially appear to the court. Whart. Crim. Pl. and Prac., Sec. 151, *et seq.*, Sec. 221; 1 Bish. Crim. Prac., Sec.

623, *et seq.;* 1 Archb. Crim. Prac. and Plead., p. 265, *et seq.;*
McNair v. The People, 89 Ill. 441; Johnson v. People, 113
Ill. 102; Pearce v. The State, 60 Am. Dec. 135; 23 Am.
Law Rev. 540; Whitesides v. People, Beecher's Breese, 21;
Thompson v. People, 96 Ill. 158; Williams v. The People,
101 Ill. 382; Hungate v. People, 7 Brad. 101; Baker v. The
People, 105 Ill. 452; Ferkel v. People, 16 Brad. 310; Bren-
nan v. The People, 110 Ill. 536.

I. R. MILLS, state's attorney, for defendant in error.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The plaintiff in error was convicted of violating the elec-
tion law.

The indictment contained eighteen counts. In the first
it was averred that the accused, at an election being held
on the 7th of April, 1891, "in the town of Mount Zion, in
the county of Macon, for the election of town officers for
said town, unlawfully, willfully and deceitfully did change
a certain ballot of one John Tohill, who was then and there
an elector of said town, in the county aforesaid, with intent
then and there unlawfully to deprive the said John Tohill
as such elector, of voting for one David C. Davidson for
the office of supervisor of said town of Mount Zion, as he,
the said John Tohill, then and there intended, contrary to
the form of the statute," etc.

The other counts (except the 8th, which was quashed),
were like the first, the name of a different voter being set
out in each one.

A motion to quash was overruled as to all the counts,
save the eighth.

A trial by jury resulted in a verdict of guilty on all the
counts except the 6th, 8th, and 17th.

A motion for new trial was interposed, whereupon the
prosecution asked and obtained leave to enter a *nolle pros.*
as to the 2d, 11th, 13th and 16th counts. The motion for
new trial was overruled, and judgment was entered impos-
ing a fine of $50, and imprisonment in the county jail for

ten days upon each of the counts remaining, eleven in number.

The trial was protracted and the record is voluminous. Many errors have been assigned. The case has been elaborately and ably presented on both sides in this court by oral as well as printed arguments.

In the view we are compelled to take, it will be unnecessary to notice all or even the major part of the points discussed.

The first question to be considered is as to the sufficiency of the indictment.

It is insisted the counts are all defective for various reasons, and especially because they fail to aver the manner and means by which the alleged change in the ballots was made. To this objection it is answered that the indictment is for a statutory offense, and that the charge is stated " in the terms and language of the statute," and " so plainly that the nature of the offense may be easily understood by the jury—relying upon Sec. 6, Div. 11 of the Criminal Code. This provision is a very familiar one. It is frequently cited at the bar and has often been discussed by our Supreme Court. It would be unnecessary labor to notice and analyze the various cases so appearing in the reports, but we think a very clear, concise and apt statement is to be found in Johnson v. The People, 113 Ill. 102, where the court say : " No principle of criminal pleading is better settled than that an indictment for a mere statutory offense must be framed upon the statute, and this fact must distinctly appear upon the face of the indictment itself. That it shall so appear, the pleader must charge the offense in the language of the statute or specifically set forth the acts constituting the same. It sometimes happens, however, that the language of a statute creating a new offense, does not describe the act or acts constituting such offense; in that case the pleader is bound to set them forth specifically. This elementary rule is laid down in all the standard works on criminal law and is recognized by this court."

Wharton on Criminal Pleading and Practice, Sec. 220, re-

marks: "On the general principles of common law pleading it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far *individuates* the offense, that the offender has proper notice from the mere adoption of the statutory terms what the offense he is to be tried for really is, but in no other case is it sufficient to follow the words of the statute. It is no more allowable under a statutory charge to put the defendant on trial without a specification of the offense, than it would be under a common law charge." And in the succeeding section:

"A statute on creating a new offense describes it by its popular name. It is made indictable, for instance, to obtain goods by falsely personating another.

But no one would maintain that it is enough to charge the defendant with 'falsely personating another.' So far from this being the case, the indictment would not be good unless it stated the kind of personation, and the person on whom the personation took effect. An act of Congress makes it indictable to 'make a revolt,' but under this act it has been held necessary to specify what the revolt is. 'Fraud' in elections in a Pennsylvania statute is made indictable; but the indictment must state what the fraud is.

It is not enough to say that the defendant 'attempted' an offense, though this is all the statute says; the particulars of the attempt must be given. 'Not a qualified voter' in a statute must be expanded in the indictment by showing in what the disqualification consists."

Bishop on Criminal Procedure, Vol. 1, Sec. 629, remarks: "An offense not defined, but created by some word of known meaning, is bounded by the term itself; yet an indictment employing the term alone, would be often insufficient. It must set out the elements of offense; thus a statute having made it an offense to maliciously and cruelly maim, beat or torture a horse, ox, or other cattle, a count for torture, the court deemed, must show the means and their effect. In all acts of this character * * * the means of producing the torture must be averred, and the

court must see that such means have the inevitable and natural tendency to produce the effect in which the criminal charge consists."

The statute upon which this indictment is predicated describes the offense thus: "fraudulently or deceitfully changes a ballot of an elector, with intent to deprive such elector of voting for such person as he intended." Cl. 3, Par. 84, Ch. 46, R. S.

Here an offense is created, and in defining it, general terms are necessarily employed. The act must be fraudulent or deceitful; there must be a change in or of a ballot, and that must be done with the intent to deprive the elector of voting for such person as he intended. The change here denounced must of course be a substantial one, and in some degree calculated to effect the illegal object. It is suggested there are various ways by which it might be accomplished, as by substituting a wholly different ballot, or by some alteration of the ballot voted, as by erasing or cutting out the name of a candidate or by placing a paster with another name over that of the candidate, or by writing in the name of another candidate, so that the ballot would be for two candidates for the same office, or by changing the name of the office, or by placing some mark or designation upon the ballot that might render it insensible and void. It is also suggested by the prosecution and it was so held by the trial court, that the change may be made, not only before the ballot is tendered to the election judges, but after it has been by them received.

The statute does not, in the language of Wharton, so far individuate the offense, as that from the adoption of the statutory terms, the offender would know what particular act he was charged with. Manifestly, it would have been impracticable to set out all the various ways by which a ballot might be fraudulently or deceitfully changed, and so the offense is stated in general terms. It thus covers all the methods by which the offense might be committed, and in alleging the offense in an indictment, the acts constituting the same must be specifically set forth.

In this case nearly a score of different voters have been imposed upon, as averred, but it is not to be known, from the language of the pleading, in what way the imposition was practiced in any of the various instances alleged.

We find it argued in the brief for the prosecution that if the accused was in fact guilty, then he was well aware of the nature of the charge he would be required to meet. It may be true that in all cases where a defendant is guilty of a violation of the law he has no need to be informed of the exact nature of the case to be made by the prosecution, and that in such instances the indictment is an unnecessary formality.

But the law proceeds upon the theory that the defendant has the right to know by the terms of the indictment precisely what charge he has to meet.

This is a constitutional right which the courts can not ignore if they would.

The defendant is not presumed to be guilty and therefore to have no need of this protection. He is presumed to be innocent until the contrary appears.

If he is in fact not guilty, it is a right of inestimable value to have the charge specifically made, to the end that he may meet and overcome the *prima facie* case that may result from false or mistaken testimony or from a combination of circumstances which, unexplained, may point toward his guilt.

He not only will wish to avoid a conviction but he will desire to vindicate his innocence. The law is as completely upheld in the acquittal of the innocent as in the conviction of the guilty. Even if the defendant be guilty, he has the legal right to hold the prosecution to the proof of guilt as alleged. He can not be convicted of a crime substantially different from that alleged, and he has the right to plead the record in bar of another prosecution for the same offense.

Passing by the other objections urged to the indictment, we are very clear that it is fatally defective in not averring the mode and means of the alleged change.

It is not necessary to further consider the case as the conclusion we have reached on this point must reverse the judgment and end the prosecution under the present indictment but we have examined the evidence as it 'appears in the abstract, and feel compelled to say that there is the gravest reason to doubt the justice of the conviction. The evidence discloses that the defendant was acting as one of the judges of the election, and that in such capacity he received the ballots in question, except perhaps two, which were voted while he was away at supper. He was also a candidate for supervisor, and was guilty of a palpable impropriety in acting as a judge of the election.

The theory of the prosecution is that the defendant changed these ballots by opening the same and making a pencil mark across the name of Davidson, between the time of receiving them, and the time of placing them in the ballot box. The marks that appear on the various ballots, and that constitute the change complained of, were made hurriedly and stealthily, or perhaps were made as they now appear, for the purpose of deceiving the voter. Certainly they are not such marks as a voter ordinarily makes for the purpose of scratching a name on a ballot which he intends to vote. Clearly, these marks were made for a fraudulent purpose, but by whom they were made is not proved. There is absolutely no evidence that defendant made them. He was sitting in front of the window through which the ballots were presented, and in full view of all persons who were on the outside. He was also in full view of four other persons, Reber, Smith, Hutchinson and Whitehouse, who were acting as election officers. These men were witnesses on the trial, the three first named being called for the prosecution and the last for the defense.

Not one of them, nor any other, saw the defendant do anything with any of these ballots save to mark the number on the back and deposit them in the ballot box. From their testimony, and from the positions occupied by the various parties about the table, it seems hardly possible that he could have made the marks in question without being

detected. The three witnesses, Reber, Smith and Hutchinson, testify that they noticed marks on ballots very much like those now appearing when the ballots were being arranged or assorted in piles after the polls were closed and before the counting began. How many they saw is not certain.

Smith thinks he saw two or three. Reber three or four. Hutchinson three. Upon this testimony it was insisted that the nine or ten, which they think they saw, and an equal number which they did not then notice, were all marked by defendant.

It is urged that when the tickets were counted these marks were on them, and Wallace, the prohibition candidate for supervisor, testifies that he noticed them on the most of them as they were read off by the defendant. but the marks may have been made by others, who had as much chance as the defendant, after they were taken out of the box. Indeed, there was an excellent opportunity for it when the tickets were being sorted over and placed in piles before counting.

It is a quite remarkable circumstance that all of the witnesses who were called to prove that they voted these tickets, and that there were no such marks on them when handed to the defendant, did not see him place any of them in the ballot box. They either turned away at the instant of parting with their ballots, or from some cause or other, failed to see what, if anything, the defendant did to or with them. This is unusual and at variance with common experience and observation.

John Tohill admitted, however, on cross-examination, that perhaps he did see his ballot numbered and put in the box. It appears, also, that this witness, Tohill, had testified in the case of the contested election between defendant and Davidson some months before, that he saw the defendant place the number on the ballot and then place the ballot in the box without having opened it, and under such detailed circumstances as that it seems highly improbable that the defendant could have then made the mark now appearing

on that ballot. This testimony was in the form of a deposition, and there can be no doubt as to what the witness then stated. Considering his age and other circumstances now admitted by him as to his recollection and the possibility of mistake, it is reasonable to place the greater reliance on what he formerly testified on this point.

Chauncey Turpin, whose ballot is the subject of the 18th count, when he was before the grand jury, testified that he saw the defendant number his ticket and place it in the box without opening or marking it on the inside. The written notes of what he so testified before the grand jury, were produced in support of the evidence of two members of that body, and while he now states that he turned his head away for a moment while the defendant was numbering his ballot, yet it is hard to believe that the defendant would have dared to change the ballot by a mark on the inside, or indeed, that he could have done it without detection, while the voter was standing at the window looking at him, except, possibly, for a space of time too short for computation.

As to the ballots of Wm. Maden and Wm. Brewer, there is great conflict in the evidence as to whether they were received by the defendant or by Whitehouse, who received ballots a short time while the defendant went to supper.

By agreement of parties, the original ballots have been presented for our inspection.

We are inclined to think the numbers on the back of these two ballots, Nos. 304 and 305, are so much like the figures made by the defendant on other ballots, which he admits, that the jury may have been justified in finding that he received and numbered these ballots. Finding this issue against the defendant was greatly to his prejudice, in view of the contest made on the point, and no doubt this was a powerful adjunct of the prosecution.

We have, however, no doubt that the numbers on the back of these ballots, and the pencil marks on the inside, over the name of Davidson, were not made by the same hand or by the same pencil. The difference in both these respects is apparent.

It is argued on behalf of the plaintiff in error, and is conceded in effect in the brief of counsel for the prosecution, that if the plaintiff in error was not guilty as to all, he was probably not guilty as to any of these ballots. While we are ready to give all due weight to the verdict of a jury where there is evidence of a direct nature, which, if unopposed, would support the finding, yet in a case like this, where there is no direct proof of guilt, and where the charge rests upon circumstantial evidence, we are inclined to scrutinize very closely, and even critically, the grounds upon which the verdict is based.

Circumstantial proof may be very satisfactory—and it may be very deceptive. It is in all our experience that it is often unreliable, and this for the plain reason that the weight due to particular circumstances is easily magnified and overestimated.

When a crime, unusual in character and affecting the public in an especial way, has been committed, a conviction may be had sometimes without sufficient proof.

It was so here. The accused may have been guilty, but the jury should not have so found on the evidence, as we read it in this record.

We omit all reference to the other errors assigned and argued at length *pro et con* in the briefs.

Because we hold the indictment defective, the judgment must be reversed, and the plaintiff in error will be discharged.